Good morning, gentlemen. I want to make sure I have the game plan straight. According to my notes from the courtroom, Deputy, Mr. Locke is going to take 15 minutes, Mr. Broderick 5 minutes, and Mr. Jourowsky won't argue, but will be president of the council table for this round. Thank you. So let's see. You must be Mr. Flynn? That's correct, Your Honor. Thanks. You've got a total of 20 minutes. May it please the Court. The Constitution, the Bill of Rights, and the criminal rules, each of them, including the Sixth Amendment, all affirm the government's position that you cannot have a non-jury trial, a bench trial, over the government's objection. The right to a jury trial, the necessity for a jury trial, comes first from, not from the that the trial of all crimes, except for impeachment, shall be by jury. There are no exceptions in that. Let me cut to the chase. District Judge says, I know the government generally has a right to a jury trial, but the defendant's right to a fair trial overrides the government's right if there's, you know, in his view, there's too prejudicial to have a jury trial. That's the essence of this. That's what he said. Yeah. What's the answer? I think, first, if I may quote exactly what he said. What he said is that the likelihood that the defendants would not receive a fair trial outweighs the government's interest under Rule 23. There are several things wrong with that. One is, this is not a balancing test. A judge does not sit down and decide whether or not the government's interest outweighs the defense's interest. The government's position is that the proper test should be, well, first of all, that this, the Constitution says that a district judge can never do this, and I can explain that. But the second thing is that to the extent that About the statement in the Supreme Court case that says if, under some rare circumstance, that it could not envision at the time, the defendant could not get a fair trial, then the trial court might be justified in sitting without the jury if the defendant waives it. I don't believe that's what the Supreme Court said. I believe what the Supreme Court says is we do not need to decide that issue. Well, they're leaving it open. They are. Okay. So there is no law on it. The only law on it You would not concede that point. You're saying there's no circumstance. Well, They were trying Osama bin Laden. They could not Your Honor, they tried Zacharias Moussaoui. It would be hard for him to get a fair trial, huh? They would. They tried Zacharias Moussaoui to a jury on the issue of death, and the jury acquitted him of the death penalty. I think that's a pretty egregious case. Well, let's assume that there could be a hypothetical case. And I think that's what they said. That would be so bad that the defendant could not get a fair trial with the jury, and he wants to waive the jury. Okay. Well, if that was presented Now, is this case one of those, if there is such a case? No. Why not? I would first of all direct the Court's careful attention to the Van Metra case, which I think is the closest and perhaps only Federal case that really deals with this issue. It's cited in our briefs. And if I may briefly recite the facts of that case. Mr. Van Metra met a waitress in Pennsylvania. The witness has said she seemed to go willingly with him to a place that turned out to be Maryland, where he brutally assaulted her, burned her body to ashes and her clothing, and dumped it in the river. She was he was charged with kidnapping. And the question was, did he, at the time that he took her into Maryland, have the intent to commit a crime? And the government was allowed by the circuit court to put on evidence of a completely separate incident involving another woman named Yohi, whom he had choked, tied, raped, sodomized, and then later hired a killer to try to, when he was in prison, hired someone to try to kill her to prevent her from testifying against him. And the court there said, no, that's not enough. Do you think those facts are comparable to the facts in this case? I do, Your Honor. I mean, I think the defense makes a lot of the facts about this case. And I'm not going to claim for one second that these are not horrible facts. But these are the kinds of facts that are tried in the courts of this country, state and federal, all the time. Well, I was just, I mean, any case involving children is a little more difficult in terms of getting a fair trial, wouldn't you think? Well, I'm not sure. I mean, children are a very, very sensitive issue. But there are issues involving people who are murdered, people who are raped, people who are tortured. If you think of the cases, for instance, of Jeffrey Dahmer, who cannibalized people and put them in vats of acid, of John Wayne Gacy, who buried 33 people who he had killed, most of them young black males, so that there is that additional problem of the racial issue, because he was white and they were black, he buried them in the basement. All of these people were tried by juries. In Sacramento alone, a man named Richard Trenton Chase was convicted before a jury of killing a woman. He first killed her, he then sodomized her body, he then disemboweled her, took a plastic yogurt cup, scooped the blood out from her, drank it, and then went out and found some dog feces and stuffed them in her mouth. These cases are horrible cases, and there are a lot of them. If I could read, if you would let me. What, the trial does seem to be most concerned about the 404B evidence. Correct. That's why I said I can't get a fair trial. Once this 404B evidence comes in, the jury will be too appalled to listen to evidence about whether the intent existed when the defendants crossed the state line or caused other people to cross the state line. If I'm stating it wrong, please restate it. What 404B evidence are you going to use? What 404B evidence are you going to use? In the trial, yeah. Well, it's described more fully in the briefs, but it's evidence of acts that these people had been doing before the incidents took place that showed that when the, for instance, in the first three counts, when victim number one went from to what would happen to him when he got there. The defense continually characterizes this as a technical issue. It is not a technical issue. The issue is what did the defendants know at the time that these actions took place? That wouldn't be 404B evidence if you have direct evidence of what they knew. Well, it's evidence of a person's act. If a person made a journal entry or said to somebody, I've got this child coming down here, and when he gets here, we're going to make a video of him having sex, that would be direct evidence. That wouldn't be 404B evidence. That would, Your Honor. That's not the evidence. Okay. Well, try to tell us what it is. The evidence is that these people were molesting their own children beforehand and that they knew each other and that they could therefore anticipate that these kinds of things would happen and that that was their intent in bringing this person down here, not their stated intent, which was to homeschool him in Texas. Do you have direct evidence other than the 404B evidence that what their intent was when the child crossed the state line? Not in the form that Your Honor is talking about, no. So you need the 404B evidence. We do, but it is still up to the district court to decide, and this is part of the fairness of this whole thing. The district court has the ability to say that some of this evidence, if necessary, is too prejudicial. That's why we have these rules. And in this respect, I would like to contrast the Sixth Amendment, which states that the accused is entitled to an impartial jury. It doesn't say a fact finder. It's an impartial jury, and contrast that with the due process guarantee of a fair trial. The due process guarantee of a fair trial has to do with the procedures at trial, and there are a wealth of them here that the district judge has yet to try and which the defendants have not even asked for to guarantee that they get a fair trial and to guarantee that the jury's impartial, but that's what they're entitled to, an impartial jury. Nowhere in the Constitution or the rules is there anything that says to the contrary. So what the judge would have to find here is that it is impossible to find an impartial jury, not that he would do a better job. And in fact the right to an impartial jury. An impartial jury is the defendant's. He has that right. If he wants to waive it, why can't the judge say his right can be waived and it overtakes whatever interest, which is less than a constitutional one, that the government might have in it? Well, that's exactly what Singer says he cannot do. The defendant does not have a constitutional right to advance trial. He has no such right. What he has is a right to an impartial jury. Now, I don't think he would want to waive his right to an impartial jury because that would simply mean that I don't care if my jury's partial or not. Well, we're sort of playing semantics whether we're talking about waiving the impartiality or waiving the jury. Well, Singer says quite explicitly, you do not have a right, you have a right to waive a jury, which means that you're not demanding your jury right, but that does not mean that you have a right to demand a bench trial. And, in fact What's the alternative? The alternative is that you get an impartial jury, unless you can prove that it is impossible to get an impartial jury. I'm sorry, I didn't follow you. You said the defendant can waive a jury, but he has no right to a bench trial. So if he can waive the jury, what would he get? If the government consents, then he gets a bench trial. That's the other element. That's the other element. That's what Singer says. The alternative, which is left open by Singer, is that a defendant could show that it's impossible to have an impartial jury. And you have to determine that. You have Vore Dyer, in which each of these defendants would be able to confront every potential juror and ask them, look, this is what this case is all about. These are the kinds of facts that you are going to be presented with, and this is what we're going to ask you to do. Can you do that? I'd like to point out that in the brief that Mr. Locke wrote, he tried that, and he went around to his neighbors, and the ones he talked to were quite honest about that. And most of them, or all of them, he says, I don't know how many he talked to, said, no, I couldn't do that, which I think stands for exactly the opposite proposition than the one that he is arguing for. It shows that when we put we may need to put a lot of them, but when we put those jurors in the box, they will tell us. This is not like the case. Kennedy. How long will this case take to trial? May I? I'm not the trial attorney, but I could ask her. Oh, you're not going to trial? Okay. Four to six weeks. That's not unheard of. Pardon? I say it's not unheard of. No. And there's so many ways in which all of these issues can be addressed in the course of the trial, because that's what the defendant is entitled to, a fair trial and an impartial jury. Counsel, let me ask you this. Suppose there were a trial and you were trying to pick a jury. You went through 1,000 people, and none of them said they could be fair on this case. Would you then think that this might be that hypothetical case that would, okay. So at some point, you might concede that you can't find. At some point, you might concede that it is impossible to find an impartial jury, and we might have to have a bench trial, but we have not done that. Suppose you follow that through. You interview 1,000 people, and the judge says, I can't pick a jury, and then the defendants say, I've decided to change my mind, I'm not going to waive the jury, then what happens? I guess we keep trying to pick a jury because we can't deny him his right to a jury trial unless he waives it. I mean, I'm surprised that you say at some point the rule that you say is so absolute the government must consent. Well, I think what Judge Rawlinson said, and I think she said it carefully, was that would we consider it in that case. And I don't know that in that case. Well, let me ask the question differently. Maybe consider is what she said, but. Actually, I said concede. Oh, did you? I'm sorry. Yeah. Would you say then that if the judge goes through 10 weeks of voir dire and cannot pick a jury, the judge could then say, under these circumstances, I'm going to overrule the government's failure to consent? I'm going to overrule. I think that's what she asked. Okay. What's your answer? I think we would probably say that at least it's not, that we would consent in that situation as well. It's not a clear error that you wouldn't think there's grounds for a writ at that point. No, we would consent at that point. Well, suppose you didn't consent. Well, I suppose that in that situation, if it had gone that far, a judge might be entitled to reach the conclusion, which I said earlier, that it's impossible, not that the likelihood outweighs our interest, but that it's impossible to choose an impartial jury. So if I understand in your position, you're not saying the judge could never accept the waiver in the government's absence of a consent. But if I understand what you're saying is the judge hasn't crossed, dotted all the I's and crossed the T's in this case. Is that what you're arguing? That's correct. I'm saying he didn't even use the right test. He tried to balance his perceived ability to be fair against the ability to be fair of people he has never seen and never investigated the possibilities of. I'd like to reserve the rest of my time. Thank you. Good morning. Good morning. Please, Court. Bruce Locke for the defense. As you stated at the beginning, Mr. Froderick is going to come up for five minutes at the end and explain to you what mistakes I've made. Mr. Kurowski is going to wait until it's all over and then tell both of us the mistakes we've made.  The government's right to consent, or their power to consent or not consent, is limited by the fact that they can't use that power to violate another provision of the Constitution. And Batson is that kind of a case. They have right to preemptory challenges, but they can't use it in a way that violates another provision of the Constitution. You know, I get this backwards all the time. Wick Yo, the San Francisco case where they were prosecuting just the Chinese people for having buildings of a particular kind. The government has the right to prosecute, but they can't use it in a way that violates the Constitution. The government has the right to consent in this case as to whether or not we can  violate the defendant's right to a fair trial. On Singer, though, they said that the defendant doesn't have an absolute right. It's not an absolute right, no. It's in that unusual case where the facts of the case are such that the court, the district court, concludes that the defendants won't get a fair trial, then the government's consent can be overridden by the district court. Why? You heard counsel. We read his brief. With all the, you got an experienced trial judge. Why, using all the different devices available, time limits? Sure. Making them focus on just the facts instead of all the Lord stuff, just that these facts occurred. The general rule of the 404B evidence is too prejudicial, such as to outweigh its probative value. It can be excluded in whole or in part. Why, using all these devices available to the trial judge under our system, couldn't he give these folks a fair trial? With a jury. Right. Because I think this case is like the cases where you're dealing with, say, a felon in possession. A bank robbery case and the felon in possession, two charges. And there we bifurcate the charges in the trial because we know that a jury is not going to be able to perform the mental gymnastics of disregarding the fact that this defendant is a felon while they're trying to decide whether he's the one who committed the bank robbery. It's also similar to a Bruton issue in that we know that when you put a non-testifying defendant's confession in and you say, I did the bank robbery with the other defendant, and you tell the jury, now you can only count that. We do those with juries. They present problems, but we solve the problems and we do those with juries. Well, but in the Bruton case, you sever the two trials. The problem, and Judge Shubb recognized this in colloquy with the trial counsel for the government, the problem here is we're talking about an element in that charge. The horrendous evidence comes in on the substantive part of the charge. Was there molestation? Was there criminal sex acts? And then the defense is the jurisdictional issue. What was the intent of the people? What was their knowledge at the time? That's an element as well. Right. They're elements of the same case, so you can't split them up. You can't bifurcate that. And you can't sever that out. And that's what makes this case. Well, you can take a lot of the luredness out of it. Oh, you can't? You don't have to introduce all those. The trial court wouldn't have to let all those journals come in and all the lured things that were done. The judge. He could let a summary of that in or one or two items and deal with the others in a summary what. The activity in this case is so horrendous that just explaining the bare. I mean, I can explain it in three minutes to somebody and they're like, I can't believe that. I mean, I've done this a lot of explaining to other people to try to figure out what you do in this case. And, you know, my sister says, well, you wouldn't take a case like that, right? I mean, it's this stuff is horrendous. It's seven-year-old girls. What's the defense? The defense is on certain, not on all of the charges, but on some of the charges, that at the time the child went across state lines, the defendants either had not formed, I represent Mr. Harrod, that Mr. Harrod hadn't formed the intent to have sex acts performed in Texas when he sent his son to Texas. The defense for the other two people to that, those charges, the Labreck's, is that there is no evidence that they knew that Mr. Harrod had been molesting children prior to that time. Why is that the kind of thing that fair-minded people would be able to chew on? Because this is the kind of case that they're going to convict the Labreck's for even associating with Mr. Harrod, for letting their kids come anywhere close to Mr. Harrod. Later on, in the later 90s, the Labreck's are sending their daughters to Mr. Harrod as soon as they reach puberty for the purpose of a religious ceremony called the presentation, which is where they become an adult. They're recognized as an adult and that presentation involves the performance of anal sex, vaginal sex and oral sex with Mr. Harrod at the age of 14. All of those girls were taught to have oral copulation at the age of 7. Okay, I understand that, but you have a defense to this, right? We have the defense to, in particular, to the first three counts because that's the beginning of the events that are charged here and there's no evidence that these acts were intended at the time that the child went across state lines. There's also Mr. Labreck later on comes... And you've got evidence of that? Well, it's an issue of lack of evidence. But the point is, once you hear the horrendous stuff, it's like knowing that you've got a felon in the case and no jury... I mean, courts make this determination all the time in various contexts. No jury is going to be able to perform the mental gymnastics of saying, okay, we put that aside, now we try to figure out what Mr. Harrod and Mr. Labreck and Mrs. Labreck knew were intended back in 1991. The jury's going to say... Because the trial judge went departed from the form instructions, we don't treat this as an unusual case and explain that this case shouldn't be in the federal court unless the defendant had the intent when the defendant crossed the state line or the child crossed the state line or whoever crossed the state line to do this. And forming the intent later is not enough. And it's your duty as jurors following your oath to do this. You say the jury can't do that? Sure. It's exactly as saying, jurors, this person's a felon. Now, disregard the fact that he's a felon when you're trying to decide whether or not... We do that all the time. If he testifies and is impeached with a prior conviction, that's exactly what we tell him. I can recite it by heart. The defendant is only on trial for the charges in this indictment. He's not on trial for anything else. He's not on trial for any previous offense he might have committed or some other offense that he committed later. He's on trial for the charges in the indictment. We do that all the time. That's where the defendant takes the stand. And anybody who's defended a felon knows you can't put him on the stand unless... I mean, you really can't. Well, they do. You can't. If he doesn't take the stand, you don't allow the fact that he's a felon to come into evidence until the first part of the case has been tried. If there isn't a bifurcation situation, a felon in possession charge, the jury never learns that the person's a felon if he doesn't take the stand. And the reason we do it is because the courts have determined that it is impossible. Human beings cannot perform the function of putting that aside unless they, our position, unless they are professionally trained lawyers and judges. And we made a considered opinion, a decision that our chance for a fair trial rested with the trial judge. That's the only way we can do it. The government recognizes that they've got a great case and if they can present this to a jury because the jury is going to be so appalled at this that they're going to convict the people regardless of whether or not the government has sufficient evidence to prove beyond a reasonable doubt the jurisdictional elements. Counsel, what's your response to opposing counsel's observation that horrendous facts are presented to juries all the time and juries with instruction from the judges are able to sort through the evidence and render a verdict? I think this case is different from the ones that he cited because you have the we call it a technical defense. The jurisdictional defense is what we're dealing with. And the other cases, it's I didn't do it. I didn't kill the person. The Van Mitter case is there was no argument about well, I didn't intend to do something when I crossed I did it, but I didn't intend to do it when I crossed the state line. I don't think there's anything unusual about that defense. If it's an element of the crime, then that has to be proven. But the difference is that it is impossible for the jury and it doesn't have to be impossible. The Singer case talks about it being extremely unlikely that the jury would be able to handle this kind of a situation. I think this is exactly like Bruton. I think it's exactly like a felon in possession where you know we're trained lawyers. It's a figment of somebody's imagination that instructions are going to be able to deal with this. The jury's going to hear the instruction. They're going to go out there and they're going to say, can you believe what he did? Can you believe it? Can you believe these people associated with him? Can you believe these people sent their kids to him? Let's convict him of that and I think they'll convict the lawyers too. The difficulty I have with your argument is that it kind of sends a message. If you make your crime horrendous enough, then you get tried before a judge and not a jury. Well, first of all, I frankly was astonished that the government wouldn't agree to the waiver actually. It would make a six-week trial containing all of this horrendous stuff into probably a five-day trial because the judge is going to hear this horrible stuff once. I mean the judge already knows the horrible stuff and that's going to be the end of that part and then it'll be what do you know, what can you prove about the jurisdictional part of the case? So, and I'm sorry, Judge, I forgot. My question was, the difficulty I have with your argument is that it kind of sends the message if you make your crime horrendous enough, then you get a choice between a judge and a jury because you can make the argument that a jury won't be able to overcome the horrendous facts. Well, you can make that argument, but I don't think that in the what, 50 years or 40 years since Singer, no, there are two cases I think where the district judge has said, no, I'm going to overrule the government. Those two cases involved really complicated facts. But this would be the first Court of Appeals decision to do that, which is a whole different model. Right, so it's not something that comes up regularly. I mean it's a very, very unusual situation. It would if we made it a precedent. No, I don't believe so. In most of the cases, it's not going to be the defense of the jurisdictional issue. And so it isn't going to be this kind of a situation. I think Judge Shub saw it perfectly and focused on it immediately that, oh, I see, you've got these defenses that are technical and we've got this horrendous, and the 404, they don't have... I think the judge should and an experienced judge would instruct them, no defense is technical. It's an element of the crime. Every element of non-indictment, nothing is technical. It must all be proved. Whether it's insured by the Federal Deposit Insurance Corporation or it traveled to the interstate commerce or the mail was used or the wires were used. The that they knew it was a fraud, that the statement was intentional, that they knew there were drugs. And we've had some acquittals where somebody has a bail of marijuana in the trunk and the jury acquits them. It's important that they knew there were drugs, even though it might have been a drug deal on another occasion. I think you're underestimating the juries, frankly. But anyway. I've done a number of jury trials. I haven't done anywhere near as many jury trials as Judge Shub has and I'm sure I haven't done as many as you have, Your Honor, but I know this case and the facts are so horrendous that the jury is not going to be able to perform the mental gymnastics required to put that aside and focus on what did they know at the time that the kid went across state lines. They're not going to do it. They're going to say, these people are so bad for being involved in this that we are going to convict them of this regardless of what the evidence is on the other side. Couldn't you ferret out whether or not people will tell you, if you've run this by people and they've been honest about their impression, couldn't you formulate a question that could ferret out whether people would be able to be fair and let the process work? No. Some people will fess up. I think a lot of the people will fess up. I don't think that everybody will fess up. I think some people will say, yeah, I can do it. And then when you get there, it's not possible. It's the same thing with Bruton. It's the same thing with a felon in possession. It's like any jury trial with bad facts. I mean, people say, I can't hear cases involving drunk drivers because I, you know, my relative was killed by a drunk driver. They had a hell of a time picking a jury with Timothy McVeigh in Oklahoma and they had to move the trial elsewhere. I mean, there are ways to control that. There aren't ways to control this part of it, Judge. This is so bad that child's children are worse than terrorist cases. This is really bad. The 404B, I need to quit so Mr. Broderick will have some time to explain to you what I missed. But the 404B of what Mr. Harrod did with his prior family, what he did with this family, what he did with his second family, is so horrendous and it comes in on every one of these counts as 404B evidence. And you, it's just overwhelming. Thank you. Thank you very much, Mr. Harrod. Good morning. Good morning, Your Honor. Mr. Broderick, before you start, congratulations on your appointment. Thank you, Your Honor. I appreciate that. Last time I saw you was during the interview process. And congratulations. I can safely say I'm no longer acting as a Federal Defender. Yes, I'm actually doing the real deal. You're the real deal. Thank you, Your Honor. Daniel Broderick of the Federal Defender's Office on behalf of Real Party and Interest, Michael Lebrecht. Your Honor, the seven words that were not mentioned at all today are the dispositive words of this case. Clear error as a matter of law. That's what we're here for. We're here on the extraordinary writ of mandamus. And the standard is clear error as a matter of law. In this particular case, if we look at what the district court did, which Your Honors have done, from the application of law to the interpretation of law, from the beginning to the end, on every single factor, the district court not only did it accurately, he did it correctly. For example, on Rule 23, the district court cited it and examined it on page 30 to 31 of the transcript of 419. It was an absolute correct analysis of the law, and there's no dispute by the government that it wasn't a correct analysis of the law. As the defendant's constitutional right to a trial by an impartial prior effect, the district court correctly analyzed that at page 36 of the 419 transcript, and the government has made no showing whatsoever that the district court erred in either its interpretation or its application of that. What about Rule 23? No. In Rule 23, the district court got it right. He said exactly what's, and he understands Singer, he said it is a statutory right to the government, but as Singer acknowledged, there could be a situation in which and this, I should preface it by saying, the only clear error as a matter of law that I have heard in connection with this case was today by government counsel, in which he kept saying that the standard was impossible. That is not the Singer standard. What Singer says is impossible or unlikely. If we look at the district court order, which the district court correctly analyzed this on page 32 I'm sorry, the reporter's transcript page 36, as well as the district court brief in this case, at page 3, the district court applied the correct Singer standard for impartial jury, whether it's a constitutional impediment to conditioning a waiver of the jury trial right on the consent of the prosecuting attorney. Correct? Correct. The standard in Singer, the issue in Singer was actually an issue that had percolated in a few court of appeals prior to that. And that was a statement by various defendants, including Mr. Singer, that he had a constitutional right to waive jury. And that was the issue presented in Singer. And as Justice Warren indicated for the unanimous court, I believe, there is no constitutional right for the defendant to waive jury. There is a const- that was the issue. That's what Singer said. There is no constitutional right. There is, in fact, a constitutional right for the defendant to have an impartial trial or fact, an impartial jury trial. What the government has indicated when it started this argument today, and when it started in its brief, is trying to fashion some sort of governmental constitutional right to a jury trial by commenting on Article 3, Section 2 of the Constitution. But, in fact, the government, in its reply brief, leads off with a discussion of Patent v. United States, but doesn't talk about what Patent says on that. Patent specifically says that that provision of the Constitution, Article 3, Section 2, does not confer upon the government in any way, shape, or form a constitutional right to a jury trial. They've got a right under the rules of criminal procedure. It's a rule of criminal procedure. There's no question. No. If the people that drafted it had intended that you could make exceptions in difficult cases, I guess they would have put it in. Well, the people that drafted it simply said what they said in the rule. And it's a rule that gives the government the right, for example, to periphery challenges. There's a rule that allows them to do that. But the Court has determined in those situations that if the government exercises its right to periphery challenges in a way that is unconstitutional, that can't override their statutory right to make periphery challenges. If the government, for example, in this case, one of the things that was terribly surprising, which we've been seeing. That's different from what you said a minute ago, that the case turned on whether the government has a constitutional right. No. I was just saying that was the government was arguing. The government was trying to argue and has tried to imply in its briefs that it had a constitutional right, and it doesn't. It just has a rule of criminal procedure right. That's all. That's the government's right. But my point is the district court. Do you agree that the court, the trial court where the drafters of the rule clearly intended, no exception, shouldn't just willy-nilly, you know, any trial judge would rather do a five-day case than a six-week case? No, I don't agree. We don't want 10 days of voir dire if they can help it. No, I don't agree. Individual voir dire if they can help it, but sometimes you've got to do it. I don't agree, Your Honor. And the fact that district court in this particular case, Judge Shub looked into, as much as he could, the legislative history for Rule 23 to determine what exactly the drafters were thinking of that, and he has an actual explanation in the transcript of what he believes may have been the cause, but there is absolutely no indication of what Congress intended by that, by that rule, whether they intended exceptions or no exceptions. The clear thing is the law is Singer is the judge. And the fact that he hasn't addressed the point, and that's another thing the government said, which is incorrect. For example, these are the procedural proposals that everybody talks about. First, we have jury questionnaire. The fact of a jury questionnaire is discussed. It was discussed at length with the district court in this case. It's a reporter's transcript for 330.     It was discussed at length with the district court in this case. It was discussed at length with the judge. With the judge. The questionnaire has not gone out to prospective juries. He said, questionnaire, he made this ruling after telling both counsel, not once but twice, not both counsel, all counsel, excuse me. After telling all counsel, I will abide by any provision, any way in which you want to do voir dire. You want to do individually sequestered voir dire, we can do it. That's not my question. My question is he hasn't actually called in people. He hasn't actually started the process. He hasn't seen people come in and say, I can't hear the case next and bring in a parade of a thousand people. Absolutely. He hasn't given up early on, hasn't he? I'm sorry. He hasn't even tried to pick a jury. They haven't started to pick a jury. No, they haven't. Okay. But, Your Honor, the point is not, we're here on mandamus, and the point is not whether you, you or you, all experienced judges, all judges who either had magistrate judge or district court experience would do it differently or would conclude differently to a different result. The message that you're sending in a mandamus position to the district court is that you clearly erred as a matter of law. And that means that we have a distinct or firm impression that a mistake has been made. That a mistake, not just a mistake. I agree with you. Not just as a mistake. The phrase in mandamus is clear error as a mistake as a matter of law. That's different from a factual weighing mistake or a clear and concise way to decide. We think you got the law wrong. We think you got the law wrong. We firmly, we have a firm impression that you got the law wrong. Right. You got the law. Not that your conclusion is different than ours. Right. Not that we would come to a different decision. Right. Not that we might use different procedures. Not that the instructions that you might give, Your Honor, are different than the instructions that he might give. This is a matter of law. That's not the standard. Any experienced judge would give pretty much the same instructions. Well, and this judge is clearly experienced. What I'm concerned about, Your Honor, and certainly I have disagreed over the years and will continue to disagree over the years with many things with Judge Shub, we've not agreed on many things, including in trial. But on this one, on this case, he did it right. He did it right from the beginning to the end. And it would be wrong for this Court to send the message. Your Honor was concerned about precedent. It would be wrong to send the message to the district court that what he did here was not the right way to do it. He had counsel brief it. He had counsel the opportunity to file additional briefs. He asked the government for any additional evidence they could have. He had counsel for the defense provide any additional evidence they could have. He had not one hearing, but two hearings on this very issue. He went through each and every case. Every case cited by the government, the Court read and examined. The Court looked at all of the things. In the Court's brief, it is absolutely right on the money on how these cases should be dealt with. If this Court is inclined to issue an opinion in this case, then the precedent should be, should examine in that opinion exactly what the district court did here. What do you think about his reason? Well, one of the reasons I'm going to allow the trial to go on before me instead of with the jury, despite the fact the government didn't waive it, is because I'm not confident I'll get all the evidentiary rulings right. Right. And he addressed that. Do you agree with that one? Well, you know, I think that probably is almost too polite for the judge to say that. I think what he's trying to say there is that he may screw up the evidence rules and it's easier if there's a jury not there to hear it. He's – well, he's acknowledging that no one's infallible. I think that's an acknowledgment that everyone should make. And frankly, no offense to any of Your Honors. It's great when I hear it from a district court that they can make that acknowledgment. I think that's all it is, is it acknowledges that nobody's perfect and he might make a mistake. But in this case, what's terribly important in this case, and it occurs on – in two contexts. The particular one, I believe, is page 21 of the transcript. And I invite you to look at page 21. Let me ask you to wrap up. Finish your thought. Okay. I'm sorry. Because I'm going to wrap up with that thought into what I want to do. What the district court said in that case is this is not – he understands the difference between a juror's repugnance for adverse facts and the difference between a juror that might not be impartial. He totally understood that. He addresses it. He talks about it. And he said, but the issue in this case, which counsel has addressed, is not the question of repugnant facts. It's the question of do I believe that it is unlikely that any juror, any jury can try this case totally impartially. And in making that decision, he had one thing in this case, which we don't – we didn't talk about today, which is in the briefs. He had a prior trial of Mr. Locke's client in State court. He was tried, sentenced to 99 years, and the witnesses – By a jury. By a jury who went through all this process, who went through this whole process in State court, who were vaudeers, who went through all sorts of instructions and everything else. And they said to the prosecutor, we felt that the jurors were on our side, that the jurors were, in fact, not impartial. So he had actual – That's after they heard the evidence. That's after – trial. No, it's during trial. It's during trial. They felt when they looked at him that they were not impartial. So the concern I have, Your Honor, is independently of how each individual one of you might decide a similar situation on those extremely, extremely rare occasions when they come up, as Your Honor indicated, hasn't even come up in any published court of appeal opinion, on those exceptionally rare occasions where it were to happen, the standard is not what would you individually do, but did this district court experience, knowing what he's doing, did he make a clear error as a matter of law, and he didn't anywhere. Okay. Thanks, Mr. Broderick. Mr. Flynn. Mr. Locke made mention of cases like Bruton and that. And I think actually those go to the government's favor, because this is how the system is supposed to work. The district judge serves the job of a filter. He, of necessity, hears all of this evidence. But if he does his job, any evidence that is overly prejudicial will never be heard by the jury. So the jury, which is presumed by the Constitution to be the best of all fact-finders, is not going to hear anything that's overly prejudicial. So even if we assume, and I have no reason to believe otherwise, that Judge Shubb is as fair as anyone else, then he is going to be exposed to evidence, all of it. The jury, some of it, all of it, none of it. That's up to Judge Shubb. And so that is one of the reasons why we have this divided system where the judge screens the evidence for us to decide what the jury does get to hear. Counsel, what's your response to opposing counsel argument that we have in this case something that we didn't have in the other cases? The state court trial where the witnesses said that the jury was not impartial, that they didn't hear. I don't know where Mr. Broderick gets to that conclusion. All that those witnesses said, these are the feelings of the witnesses, and they said that they felt that the jurors understood them, and the jurors later said that they believed them. That's what was the jurors' job, was to decide whether these children were credible. And they decided that they did. I don't see anything wrong with that. There's nothing in the record of any sentiment that the juries were not impartial in weighing the evidence. No, he said that. And I don't think you have all of the documents in front of you. I don't think it says that at all. It says that there was sympathy. I mean, how could anybody? I'm sure Judge Shubb would feel very sympathetic for these children. But he, if he was the decider or the jury, which I hope will be the decider, will be told, don't be swayed by sympathy. Listen and see whether you think they're believable. And that's what those jurors said. We found these children to be very believable. There's also one thing lurking here that I didn't bring up before, which is the fact that there's no evidence that I know of that says that a judge can be, as a general matter, more impartial than a jury. Maybe they can, maybe they can't. We submitted a study that says, no, that they're not, that they're both about the same in this ability to forget evidence and that that's why this divided system is the best. But I think that what's important here is that the Constitution flatly says, this is a country where we have trials by juries. Are there exceptions to that? Well, we found out that there is if everybody consents. Well, they could have written the rule differently. They could have written the rule differently. The Constitution, that the government has the right to refuse to waive the jury. The criminal rule could have been written differently. Yes. The Supreme Court has heard that rule. Just the defendant has to consent. I don't think that would have been unconstitutional. I don't know. We would have to take that up. But the Supreme Court wrote it that the government does have to. I think an appeal to the Magna Carta by the United States in this case is out of place. It's a matter of the rule. Well. The Supreme Court has not ruled that the government has a constitutional right. No, they have not, Your Honor. I'm not claiming that. But the Supreme Court did promulgate Rule 23A. And on that, the government will rest. Thank you. Thanks to all gentlemen for a very good argument. The case just argued is submitted and will stand recess for the day.
judges: Silverman, Rawlinson, Bertelsman